[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14346
Non-Argument Calendar
_____

D.C. Docket No. 3:07-cr-00280-MMH-MCR-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT E. CREWS,

Defendant-Appellant.


_____

No. 11-14347
Non-Argument Calendar
_____

D.C. Docket No. 3:09-cr-00050-MMH-MCR-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT E. CREWS,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(November 8, 2012)

Before PRYOR, JORDAN and ANDERSON, Circuit Judges

PER CURIAM:

Robert E. Crews appeals his cumulative sentence of 162 months of imprisonment following his pleas of guilty to being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), failing to appear, id. § 3146(a)(1), criminal contempt while on bond, id. §§ 401, 3147, and causing the United States Coast Guard to attempt to rescue him when no help was needed, 14 U.S.C. § 88(c). Crews argues that his cumulative sentence is procedurally and substantively unreasonable. Crews, for the first time, also challenges as unconstitutional the requirement that he register as a sex offender based on his conviction in 1994 for attempting to commit a lewd and lascivious assault on a child. We affirm.

In October 2007, a grand jury indicted Crews for two counts of possessing a

2

firearm as a convicted felon.  18 U.S.C. § 922(g).  Later, Crews entered an agreement to plead guilty to one charge in exchange for the dismissal of his second charge.  The plea agreement provided that Crews waived his right to appeal his sentence, subject to three exceptions: the sentence exceeded the "applicable guidelines range as determined by the Court"; the sentence exceeded the maximum statutory penalty; or the sentence violated the Eighth Amendment.

In April 2008, Crews entered a change of plea to guilty to possessing a firearm.  Crews verified that he had read and signed the plea agreement and that he had read and agreed with all the statements in the factual basis.  A magistrate judge explained Crews's right to appeal his sentence and the consequences of his decision to waive that right, and Crews verified that he had agreed, subject to the three exceptions, to waive his right to appeal his sentence.  The district court later accepted Crews's plea of guilty.

On October 28, 2008, Crews failed to appear for sentencing.  The previous day, Crews had driven his truck to a boat ramp, left a suicide note in his truck, piloted a boat out to sea, and then swam back to shore to hide from the police.  The Coast Guard expended over $20,000 while conducting an eight-hour search for Crews.

On October 29, 2008, Crews went to his house, where he discovered his

3

wife, Robin Crews, with another man. Crews stabbed Robin multiple times in the head and neck until he bent his knife, and then Crews attempted to strangle Robin. Robin survived the attack and required 100 staples and stitches to close her wounds. Crews was convicted in a Florida court of aggravated assault and sentenced to 180 months in prison.

In February 2009, a grand jury indicted Crews for three new crimes: failing to appear for sentencing, 18 U.S.C. § 3146(a)(1); criminal contempt by committing an aggravated assault, id. §§ 401, 3147; and causing the Coast Guard to attempt an unnecessary rescue, 14 U.S.C. § 88(c). Before a magistrate judge, Crews entered a change of plea to guilty for all three crimes without the benefit of a plea agreement. The district court later accepted Crews's pleas of guilty.

The district court consolidated Crews's four convictions for sentencing. The presentence investigation report grouped Crews's offenses for being a felon in possession of a firearm, failing to appear, and criminal contempt because they involved substantially the same harm. United States Sentencing Guidelines Manual §§ 2J1.2 cmt. n.3, 3C1.1 cmt n.8, 3D1.2(c) (Nov. 2010). The report provided a base offense level of 20 for being a felon in possession, id. § 2K2.1(a)(4)(A), which the report increased by four levels because the serial numbers on the firearm had been obliterated, id. § 2K2.1(b)(4)(B); by two levels

4

for obstruction of justice, id. § 3C1.1; and by three levels for committing an offense while on release, id. § 3C1.3. With a total offense level of 29, id. § 3D1.4, and a criminal history category of III, the report provided an advisory guideline range between 108 and 135 months of imprisonment. The report also provided that Crews faced maximum sentences of 10 years for being a felon in possession and committing a new offense and maximum sentences of 5 years for his offenses of failing to appear and criminal contempt. The report described Crews's lengthy criminal history, which included his prior convictions for twice committing grand theft, escaping from jail, attempting a lewd and lascivious assault on a child under 8 years old, burglary of a structure, and aggravated battery with a weapon; his other criminal conduct of theft, dealing in stolen property, aggravated assault, domestic battery, and aggravated child abuse; and his arrests for aggravated battery, battery, grand theft, and petit theft. The report also stated that, during a mental health evaluation, Crews had expressed regret that his wife had survived the stabbing.

At the sentencing hearing, the government introduced evidence about Crews's abusive nature and determination to harm Robin Crews, but Crews denied any ill will against his wife. The government introduced photographs taken after the stabbing, testimony from several witnesses, and a videotaped interview in

5

which Robin Crews described the stabbing incident and how Crews had abused her in the past. The government also introduced audio recordings of several telephone calls that Crews had made from jail to family members. During his telephone conversations, Crews stated that he should have killed Robin and would harm her if given an opportunity; encouraged his former wife and daughters to physically harm Robin; and discussed finding a third party to "pay him back." Crews argued for leniency given that he had stabbed Robin in a heat of passion after discovering her with another man. Crews also argued that he had vented some frustration during his telephone calls, but he did not intend to harm Robin.

The district court sentenced Crews to a cumulative sentence of 162 months of imprisonment. The district court imposed sentences of 108 months for being a felon in possession of a firearm and 60 months for contempt, to run concurrently, and sentences of 24 months for failing to appear and 30 months for the unnecessary rescue, to run consecutive to each other and to Crews's other sentences. The district court also ordered that Crews's sentences would run consecutive to his sentence in the Florida court for aggravated assault.

The district court said that it was "absolutely imperative and appropriate" to impose consecutive sentences of imprisonment and, if it should have imposed concurrent sentences, it would have varied upward because the sentencing factors

6

required that Crews receive a sentence above the advisory guideline range.  The

district court stated that "a sentence of 162 months, consecutive to the state court

sentence, [was] the appropriate sentence in this case."  The district court explained

that it fashioned Crews's sentence to address his "willful decision" to evade a

mandatory minimum sentence of 15 years for his firearm offense; to punish his

"utter disrespect for the Court" and other serious offenses;  and to ensure that he

served a separate term of imprisonment for "brutally attack[ing] . . .and

attempt[ing] to kill [Robin]" in the presence of "his screaming daughter."  The

district court stated that a sentence "concurrent . . . [with Crews's state sentence]

would be wholly insufficient"; "would absolutely undermine almost every single

one of the statutory purposes of sentencing"; and would fail to serve as "just

punishment" for Crews's "separate offenses."  The district court also stated that

concurrent terms of imprisonment would fail to provide any deterrence or protect

the public "because an individual could commit new crimes while on release and

suffer no additional penalty."

The government argues that Crews's challenge to the reasonableness of his

sentence for possessing a firearm is barred by the appeal waiver in his plea

agreement, but we disagree.  We do not apply a "rigidly literal approach" or a

"hyper-technical reading of the written agreement," but we construe any

ambiguities against the government.  United States v. Jefferies, 908 F.2d 1520, 1523 (11th Cir. 1990) (internal quotation marks omitted).  "To constitute a valid waiver of substantial constitutional rights, a guilty plea must represent a voluntary, knowing, intelligent act, and must be offered with sufficient awareness of the likely consequences."  In re Arnett, 804 F.2d 1200, 1203 (11th Cir. 1986); see United States v. Bushert, 997 F.2d 1343, 1351 (11th Cir. 1993).  Although a magistrate judge warned Crews during his pre-trial detention hearing that his sentence "could be enhanced for obstructing or impeding the due administration of justice," Crews was not told when he later entered his plea agreement or during his guilty plea colloquy that the commission of another offense could affect his sentence.  And Crews's later offenses of failing to appear and criminal contempt influenced the calculation and selection of his sentence for his offense of being a felon in possession.  The record fails to reflect that Crews knowingly waived the right to appeal a sentence determined by events following his change of plea to guilty.

The district court correctly calculated Crews's guideline range.  The district court did not clearly err in imposing a two-level increase for obstruction of justice because Crews "willfully failed to appear, as ordered, for a judicial proceeding."  U.S.S.G. § 3C1.1 cmt. n.4(E).  "Conduct resulting in an enhancement . . . [for

obstruction of justice] ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct," id. § 3E1.1 cmt. n.4, and the district court did not clearly err in denying Crews a two-level reduction for acceptance of responsibility in the light of his attempt to evade punishment by faking a suicide, attempting to kill his wife, and his statements to others about "finish[ing] the job." The district court also was required to impose a three-level increase for committing a new offense because Crews assaulted his wife while on release after pleading guilty to being a felon in possession of a firearm. Id. § 3C1.3.

Crews argues that the district court erred in ordering that his sentences for failing to appear, causing the Coast Guard to attempt a rescue, and aggravated assault run consecutive to his sentence for being a felon in possession, but any error was harmless. See United States v. Keene, 470 F.3d 1347, 1349 (11th Cir. 2006). The district court stated that, even if it were required to run Crews's sentences concurrently, it would vary upward to impose a sentence of 162 months of imprisonment.

Crews's sentence is also reasonable. The district court considered the sentencing factors, see 18 U.S.C. § 3553(a), and reasonably determined that a cumulative sentence of 162 months that ran consecutive to Crews's sentence of 180 months for aggravated assault would provide adequate punishment, promote

9

respect for the law, deter future similar crimes, protect his wife and the public, and would best address Crews's recidivism, refusal to accept responsibility, and his lack of "respect for other human lives."  Although the district court varied upward from the advisory range recommended under the Sentencing Guidelines, Crews's sentence is less than half of the length of the maximum statutory sentences for his four crimes.  See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008). The district court considered Crews's argument about caring for his young children and his heat of passion defense, but the district court found those arguments unavailing.  Crews faked his death to avoid sentencing for a serious firearm offense and caused the Coast Guard to expend valuable time and resources to investigate his disappearance.  Crews then attempted to kill his wife and, when his efforts proved unsuccessful, urged his children and others to harm her.  Even during his sentencing hearing, Crews refused to accept responsibility for or express remorse for his crimes.  The district court did not abuse its discretion.

The district court alsodid not err, plainly or otherwise, by ordering Crews to register as a sex offender.  Crews argues that the registration requirement violates the Ex Post Facto Clause and the prohibition against cruel and unusual punishment in the Eighth Amendment, but we held in United States v. W.B.H., 664 F.3d 848, 851–60 (11th Cir. 2011), that the retroactive imposition of the Act is constitutional

10

and does not "impose additional punishment for past sex offenses." Crews argues that the Act violates the separation of powers, but we squarely rejected that argument in United States v. Ambert, 561 F.3d 1202, 1212–13 (11th Cir. 2009), where we held that Congress did not impermissibly delegate its authority to the states. Crews also argues that the registration requirement lacks a rational basis to survive scrutiny under the Equal Protection Clause, but we held in Ambert that the federal sex-offender registration requirements are "rationally related to Congress' legitimate goal in protecting the public from recidivist sex offenders." 561 F.3d at 1209.

Crews's sentence is **AFFIRMED**.

11