[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10143
Non-Argument Calendar
_____

D.C. Docket No. 6:13-cr-00126-GAP-TBS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEE THOMAS RIVERS,
a.k.a. Lee Thomas Rivers, Jr.,
a.k.a. Lee Thomas River, Jr.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 15, 2014)

Before TJOFLAT, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Defendant Lee Thomas Rivers is a sex offender subject to the registration requirements of the Sex Offender Registration and Notification Act ("SORNA"). He appeals the district court's denial of his motion to dismiss the charges against him for failing to register and update his registration as required by SORNA, in violation of 18 U.S.C. § 2250(a). Rivers argues that SORNA is unconstitutional because it exceeds the scope of Congress's commerce authority in light of the Supreme Court's decision in *National Federation of Independent Buiness. v. Sebelius*, 567 U.S. ___, 132 S. Ct. 2566 (2012) ("*NFIB*"), and because it violates the Ex Post Facto Clause and the non-delegation doctrine. After careful review, we affirm.

## I.

The essential factual history is not disputed. Rivers was convicted in South Carolina in 1991 of criminal sexual conduct with a minor and sentenced to 16 years' incarceration. In December 2008, Rivers signed a sex-offender registration form in South Carolina, acknowledging that if he moved to another state, he must timely notify local authorities in South Carolina, register with the new state, and abide by the new state's reporting requirements. Rivers signed a similar form in South Carolina in August 2009.

In 2010, Rivers moved to Florida without updating his sex-offender registration. He was arrested in Florida in October 2010 on a warrant out of South

Carolina for failure to register as a sex offender and failure to appear on those charges. Florida authorities compelled Rivers to register as a sex offender in Florida at that time. The form that Rivers signed in Florida advised him that he had up to 48 hours to report any changes of address to local authorities and that he was required to update his registration twice a year for the rest of his life.

In December 2010, Rivers returned to South Carolina, pled guilty to failing to register as a sex offender, and was sentenced to thirty days in jail. Rivers signed another sex-offender registration form in South Carolina in March 2012. This form included additional language stating that if Rivers moved to another state without updating his registration, he would be subject to federal prosecution under 18 U.S.C. § 2250.

At some point in 2012, Rivers moved from South Carolina to Ocoee, Florida. From Ocoee he moved to Winter Garden, Florida. He did not register in Florida or update his registration in South Carolina to reflect the moves. Rivers was arrested in April 2013 in Windermere, Florida, where he had been working. After his arrest, Rivers admitted to knowing that he was required to register but stated that he did not do so because he did not want his girlfriend to find out that he was a sex offender.

Rivers was charged in a federal indictment filed in the United States District Court for the Middle District of Florida with traveling in interstate commerce to

3

Florida from South Carolina and failing to keep his registration current under SORNA, in violation of § 2250. He moved to dismiss the indictment, arguing that the charges were improper because the Supreme Court's decision in *NFIB* effectively overruled this Court's decision in *United States v. Ambert*, 561 F.3d 1202 (11th Cir. 2009), which had upheld SORNA's constitutionality against various challenges, including that SORNA exceeded the scope of Congress's commerce authority. Rivers also raised challenges to SORNA under the Ex Post Facto Clause, U.S. Const. art. I, § 9, cl. 3, and the non-delegation doctrine. The district court denied the motion to dismiss.

Soon thereafter, Rivers sought to enter a conditional plea of guilty that would allow him to preserve the right to appeal the denial of his motion to dismiss. The government would not consent, citing office policy, so Rivers proceeded to trial before a jury and conceded his guilt. At the close of evidence, the district court denied Rivers's renewed motion to dismiss the indictment. The jury found Rivers guilty. The district court imposed a sentence of imprisonment of one year and one day to be followed by a ten-year term of supervised release. This appeal followed.

## II.

We generally review the denial of a motion to dismiss an indictment for an abuse of discretion. *United States v. Madera*, 528 F.3d 852, 854 (11th Cir. 2008).

4

Where the district court's determination rests on its resolution of questions of law, though, as it does here, we review those questions of law *de novo*. *Id*.

### III.

SORNA contains two primary statutory sections applicable to this case. Under 42 U.S.C. § 16913, a sex offender is required to register, and to keep registration current, in each jurisdiction where the offender resides, works, or is a student, and he must appear in person and provide the information required for the sex-offender registry within three business days of a change of name, residence, employment, or student status. 42 U.S.C. § 16913(a), (c). Section 2250 imposes criminal liability on two categories of persons who knowingly fail to adhere to SORNA's registration requirements: any person who is a sex offender due to a federal conviction, § 2250(a)(2)(A); and any other person required to register under SORNA who travels in interstate or foreign commerce, § 2250(a)(2)(B). *Carr v. United States*, 560 U.S. 438, 451, 130 S. Ct. 2229, 2238 (2010).

Congress delegated authority to the Attorney General to determine whether SORNA and its registration requirements apply retroactively to offenders convicted before SORNA's enactment. 42 U.S.C. § 16913(d); *Madera*, 528 F.3d at 857-58 (explaining that "Congress vested the Attorney General with sole discretion to determine SORNA's retroactivity"). The Attorney General has determined that SORNA's requirements "apply to all sex offenders, including sex

5

offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 72.3.

A.    *Commerce Clause*

Rivers acknowledges our previous holding in *Ambert* that § 2250 is a valid exercise of congressional power under the Commerce Clause, U.S. Const., Art. I, § 8. *See* 561 F.3d at 1210. Therefore, Rivers's challenge is foreclosed unless *Ambert* is no longer controlling, because we are bound by the holding of a prior opinion unless the holding is overruled or undermined to the point of abrogation by the Supreme Court or by this Court sitting *en banc*. *See United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009). Rivers argues that *Ambert* was undermined by the Supreme Court in *NFIB*. We disagree.

In *Ambert*, we began by recounting Congress's three categories of power under the Commerce Clause, as delineated by the Supreme Court in *United States v. Lopez*, 514 U.S. 549, 115 S. Ct. 1624 (1995):

> (1) "Congress may regulate the use of channels of interstate commerce"; (2) "Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce."

6

*Ambert*, 561 F.3d at 1210 (quoting *Lopez*, 514 U.S. at 558-59, 115 S. Ct. at 1629-30).

We then explained that § 2250 is constitutional "because it regulates both the use of channels of interstate commerce and the instrumentalities of interstate commerce." *Id.* at 1210. We observed that § 2250 regulates the channels of interstate commerce because part of the commission of the offense for state sex offenders like Rivers requires "travel in interstate commerce." *Id.* at 1211. We further noted that "when a sex offender travels from one state to another, he is an instrumentality of interstate commerce." *Id.* By regulating these persons under SORNA, we explained, Congress did no more than employ its "lawful commerce power to prohibit the use of channels or instrumentalities of commerce for harmful purposes." *Id.*

We further held in *Ambert* that § 16913 of SORNA is "reasonably adapted to the attainment of a legitimate end under the commerce clause." *Id.* at 1212. We found it "clear that SORNA was designed to create an interstate system to counteract the danger posed by sex offenders who slip through the cracks or exploit a weak state registration system by traveling or moving to another state without registering therein." The registration requirements under § 16913, we held, are "necessary to track those offenders who move from jurisdiction to jurisdiction." *Id.*

7

Describing *NFIB* as "a particularly difficult opinion to decipher," Rivers nevertheless asserts that the decision has called into doubt the holding of *Ambert*. *NFIB* is difficult because the discussion of the Commerce Clause in Part III-A of the primary opinion, authored by Chief Justice Roberts, was not joined by any other Justice and arguably was not necessary to the Court's decision to uphold the constitutionality of the Patient Protection and Affordable Care Act. *See NFIB*, 567 U.S. at ___, 132 S. Ct. at 2585-93. Therefore, the Chief Justice's discussion of the Commerce Clause may not be binding, but we need decide not that question at this time. *See United States v. Robbins*, 729 F.3d 131, 135 (2d Cir. 2013) (declining to address this question in a challenge to SORNA). Even assuming that it is binding, Rivers's arguments on appeal are unavailing.

Combining Chief Justice Roberts's opinion in tandem with the jointly authored dissent, Rivers derives five relevant propositions from *NFIB* that he says limit Congress's Commerce Clause authority in important respects. *See NFIB*, 567 U.S. at ___, 132 S. Ct. at 2642-50 (Scalia, Kennedy, Thomas, and Alito, JJ., dissenting). First, Rivers asserts, Congress cannot regulate inactivity or compel individuals to engage in activity. Second, he continues, Congress cannot regulate the current conduct of individuals based on predictions about their future conduct. Third, Rivers suggests, the Necessary and Proper Clause, U.S. Const. art. 1, § 8, cl. 18, is not an independent source of authority, but can be used only to supplement

an enumerated power. Fourth, Rivers contends, Congress has no authority "to regulate individuals as such; it may only regulate activities." Finally, Rivers concludes, a regulation cannot be upheld where accepting its constitutionality would lead to "limitless regulatory authority."

According to Rivers, SORNA is unconstitutional because it compels individuals to engage in activity: registration as a sex offender. Moreover, Rivers asserts, that activity is purely intrastate and non-economic in nature, and it is not connected to a comprehensive regulatory scheme of an interstate market, as in *Gonzales v. Raich*, 545 U.S. 1, 9, 125 S. Ct. 2195, 2201 (2005) (upholding regulation of purely intrastate activities that are part of an economic class of activities that have a substantial effect on interstate commerce). The broader purpose of SORNA, Rivers states, is similarly non-economic in nature.

Initially, we note that this case, like *Ambert*, concerns a defendant whose conviction under SORNA involves "travel[] in interstate commerce," § 2250(a)(2)(B). We therefore do not reach the question of whether *NFIB* has anything to say about a defendant who is a sex offender by reason of a federal conviction, § 2250(a)(2)(A). Proceeding with that limitation in mind, and assuming without deciding the truth of Rivers's assertions regarding what *NFIB* held with respect to Congress's commerce authority, we hold that we are bound by *Ambert*'s holding notwithstanding *NFIB*.

9

The Supreme Court's decision in *NFIB* does not undermine, or even appear to say anything about, the bases of *Ambert*'s holding. *Ambert* held that § 2250(a) was constitutional under the first two *Lopez* categories because it regulated the channels and the instrumentalities of interstate commerce. *Id*. at 1210-11. *NFIB*, on the other hand, addressed *Lopez*'s third category of permissible regulation under the Commerce Clause—the regulation of activity that has a substantial relation to or effect on interstate commerce. *See NFIB*, 567 U.S. at __, 132 S. Ct. at 2585-90. The Court's decision in *Raich* was similarly concerned with this third category of regulation. *See Raich*, 545 U.S. at 16-17, 125 S. Ct. at 2205. Because *NFIB* did not cast doubt on Congress's ability to regulate the channels or instrumentalities of interstate commerce, it is not "clearly on point" and does not "directly conflict" with our decision in *Ambert*. *See Kaley*, 579 F.3d at 1255.

Furthermore, SORNA "compels" registration from only those individuals who have been previously convicted of a sexual offense. *See United States v. Cabrera-Gutierrez*, 756 F.3d 1125, 1132 (9th Cir. 2014). In that sense, these individuals have "opted in" to the group of persons whose activities are regulated by SORNA, unlike the uninsured in *NFIB*. *Robbins*, 729 F.3d at 136. Nor was Rivers's conviction in this case based solely on his inactivity. Rather, the registration requirement that Rivers knowingly failed to meet was triggered by specific activity: travel across state lines. *See* 18 U.S.C. § 2250(a)(2)(B). Indeed,

10

interstate travel is the focal point of SORNA's regulations.  *See Ambert*, 561 F.3d at 1212 ("[A]n examination of § 16913 and § 2250 makes the interstate focus abundantly clear.").  "As applied to [Rivers], then, §§ 16913 and 2250(a) not only regulate activity, but activity that directly employs the channels of interstate commerce."  *Robbins*, 729 F.3d at 136; *see also Ambert*, 561 F.3d at 1211-12.

In short, we held in *Ambert* that SORNA was a constitutionally valid regulation of the channels and instrumentalities of interstate commerce.  *Ambert*, 561 F.3d at 1211-12.  Nothing in the Supreme Court's decision in *NFIB* undermines the reasoning behind that settled precedent.  Accordingly, at least as applied to defendants like Rivers, we remain bound by *Ambert*'s holding that SORNA is a valid exercise of Congress's commerce authority.

B.    *Ex Post Facto Clause and Non-Delegation Doctrine*

Rivers's arguments under the Ex Post Facto Clause and the non-delegation doctrine, which he raises solely to preserve the issues for further review, are squarely foreclosed by this Court's precedent, as he acknowledges.  *See Ambert*, 561 F.3d at 1207-08, 1212-14.  We therefore do not address them further.

**IV.**

In sum, we reaffirm our holding in *Ambert* that SORNA is a valid exercise of Congress's commerce authority as applied to state sex offenders like Rivers who travel in interstate commerce.  Therefore, the district court did not abuse its

11

discretion in denying Rivers's motion to dismiss his indictment, and we affirm Rivers's conviction and sentence.

**AFFIRMED.**