[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 28, 2010
JOHN LEY
CLERK

_____

No. 09-13115

_____

D. C. Docket No. 08-00050-CR-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER C. DEAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(April 28, 2010)

Before HULL, WILSON and FARRIS,[*] Circuit Judges.

_____

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

FARRIS, Senior Circuit Judge:

Christopher Dean appeals his guilty plea to the charge of having traveled in interstate commerce and knowingly failing to register as a sex offender under the Sex Offender Registration and Notification Act, in violation of 18 U.S.C. § 2250(a) (2006). Dean asserts that the Attorney General did not have good cause to promulgate a rule making SORNA retroactive without notice and comment as required by the Administrative Procedure Act. We have jurisdiction under 28 U.S.C. § 1291(2006) and 18 U.S.C. § 3742(a)(1) (2006). We affirm.

I.

On January 18, 1994, Dean was convicted of criminal sexual conduct in the third degree in Minnesota. As a result of the conviction, Dean was required to register as a sex offender. Dean relocated to Montana in 2003 and registered as a sex offender there. Dean then subsequently relocated to Georgia and registered in 2005 as a sex offender and provided notice to Montana. Dean traveled to Alabama sometime between July 2007 and August 2007 and failed to register as a sex offender there. Dean was arrested in Alabama for failing to register. On March 14, 2008, Dean was charged in federal district court with one count of having traveled in interstate commerce and knowingly failing to register as a sex offender as required by SORNA, in violation of 18 U.S.C. § 2250(a).

2

Dean moved to dismiss his indictment in the district court, arguing that SORNA was invalid under the Administrative Procedure Act, non-delegation doctrine, and Commerce Clause, Ex Post Facto Clause, and Due Process Clause of the Constitution. The district court denied Dean's motion to dismiss. Dean then pled guilty to the charge, was sentenced to time served, and filed this timely appeal. Dean is not currently incarcerated but is subject to supervised release.

II.

Congress enacted the Sex Offender Registration and Notification Act, which became effective on July 27, 2006. 42 U.S.C. § 16901 (2006). SORNA mandated that all states maintain a sex offender registry and set a deadline for states to implement SORNA before July 27, 2009. 42 U.S.C. §§ 16912, 16924 (2006). SORNA sets out an initial registration requirement for sex offenders in 42 U.S.C. § 16913(b) (2006). Subsection (b) provides that:

> The sex offender shall initially register--
> (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
> (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

*Id.* SORNA also provides specifically, under § 16913(d): Initial registration of sex offenders unable to comply with subsection (b) of this section, that:

3

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. §§ 16913(b), (d).

On February 28, 2007, the Attorney General promulgated an interim rule pursuant to § 16913(d) making SORNA retroactive to all sex offenders convicted prior to SORNA's enactment. 28 C.F.R. § 72.3 (2007). In promulgating the rule, the Attorney General invoked the "good cause" exceptions of the Administrative Procedure Act at 5 U.S.C. §§ 553(b)(3)(B) and (d)(3) and did not have a pre-promulgation notice and comment period. 72 Fed. Reg. 8894, 8896-7 (2007).

The Attorney General issued a statement of good cause with the rule, noting the practical dangers of additional sexual assaults and child sexual abuse or exploitation offenses if SORNA were not made immediately retroactive:

> The immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements—and related means of enforcement, including criminal liability under 18 U.S.C. 2250 for sex offenders who knowingly fail to register as required—to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition

4

of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA. This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders," SORNA § 102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay in the effectiveness of a final rule.

It would accordingly be contrary to the public interest to adopt this rule with the prior notice and comment period normally required under 5 U.S.C. 553(b) or with the delayed effective date normally required under 5 U.S.C. 553(d).

*Id.* at 8896-97. The rule took effect immediately. *Id.* at 8895. The Attorney General accepted post-promulgation comments on the rule through April 30, 2007. *Id.*

### III.

We review a district court's denial of a motion to dismiss for abuse of discretion. *United States v. Madera*, 528 F.3d 852, 855 (11th Cir. 2008). Additionally, we review "questions of statutory interpretations *de novo*, although an agency's interpretive guidance construing a statute is entitled to deference 'proportional to its power to persuade.'" *Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir. 2009). Agency actions under the APA are reviewed under the "arbitrary

5

and capricious standard, which provides the reviewing court with very limited discretion to reverse an agency decision." *Id.* (citations omitted).

Dean argues that (1) SORNA is not a valid exercise of Congress's Commerce Clause power because the regulated activity does not have a substantial effect on interstate commerce nor does it involve or affect the channels or instrumentalities of interstate commerce; (2) SORNA is an improper delegation of legislative power; and (3) the government did not notify Dean of the requirement for him to register as a sex offender. He concedes that we addressed his arguments on point in *United States v. Ambert*, 561 F.3d 1202 (11th Cir. 2009). *Ambert* rejected both Commerce Clause claims, the non-delegation claim, and the due process claim. *Ambert*, 561 F.3d at 1208-14. Furthermore, "only the Supreme Court or this court sitting *en banc* can judicially overrule a prior panel decision." *Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997). As *Ambert* has not been overturned by this Court sitting *en banc* or by the Supreme Court*,* we are bound by *Ambert*. Dean's constitutional arguments therefore must fail. *See Ambert*, 561 F.3d at 1208-15; *United States v. Brown*, 586 F.3d 1342, 1351 (11th Cir. 2009).

IV.

Dean's remaining argument is that the Attorney General's rule that SORNA applied retroactively did not comply with the requirements of the APA. Dean does

not dispute that SORNA would apply to him if the rule making it retroactive is valid. Whether the Attorney General had good cause to bypass the notice and comment requirements of the APA is an issue of first impression in this Court and one that has split our sister circuits. *See United States v. Gould*, 568 F.3d 459 (4th Cir. 2009), *cert. denied*, – S. Ct. –, 2010 WL 680575 (2010); *United States v. Cain*, 583 F.3d 408 (6th Cir. 2009).

The APA provides that there should be notice and comment before the promulgation of any rule. 5 U.S.C. § 553 (2006). The purpose of the notice provision is to "disclose the thinking of the agency and the data relied on." *Lloyd Nolan Hospital and Clinic v. Heckler*, 762 F.2d 1561, 1565 (11th Cir. 1985). Furthermore, notice and comment "allow[s] an agency to reconsider, and sometimes change, its proposal based on the comments of affected persons." *Miami-Dade County v. United States Environmental Protection Agency*, 529 F.3d 1049, 1059 (11th Cir. 2008).

The Attorney General concedes that he did not follow the standard notice and comment procedures required by the APA. Instead, the Attorney General invoked the "good cause" exceptions contained at 5 U.S.C. §§ 553(b)(3)(B) and (d)(3). 72 Fed. Reg. 8894, 8896 (2007). The good cause exceptions allow the agency to skip notice and comment "when the agency for good cause finds (and

7

incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B).

We have indicated previously that the good cause exception "should be read narrowly." *United States Steel Corp. v. United States Environmental Protection Agency*, 595 F.2d 207, 214 (5th Cir. 1979)[1]; *see also Jifry v. F.A.A.*, 370 F.3d 1174, 1179 (D.C. Cir. 2004) (indicating that the exception should be "narrowly construed and only reluctantly countenanced"). The exception is, however, "an important safety valve to be used where delay would do real harm." *United States Steel Corp.*, 595 F.2d at 214. In *United States Steel Corp.*, we noted that "[u]se of the exception has repeatedly been approved, for example, in cases involving government price controls, because of the market distortions caused by the announcement of future controls. The exception was also held applicable to regulations concerning gas stations, where temporary shortages and discriminatory practices were found to have deprived some users of any supply and led to violence." *Id.* at 214 n.15 (citations omitted).

The Attorney General's two reasons for good cause both relate to the public

---

[1] Decisions of the Fifth Circuit prior to the Eleventh Circuit's split from the Fifth Circuit are binding on the Eleventh Circuit. *Bonner v. City of Pritchard, Alabama*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

interest. He asserts that the rule (1) provides guidance to eliminate uncertainty; and (2) prevents the delay in registration of sex offenders who would evade the registration requirements during the notice and comment period, commit additional sexual assaults, and be harder to apprehend. 72 Fed. Reg. at 8896-97.

Only two other circuits have addressed this issue, and they reached different conclusions.[2] *United States v. Gould*, 568 F.3d 459, 470 (4th Cir. 2009), upheld the Attorney General's invocation of good cause to bypass the notice and comment requirements for the rule making SORNA retroactive. The *Gould* court held that "[t]here was a need for legal certainty about SORNA's 'retroactive' application to sex offenders convicted before SORNA and a concern for public safety that these offenders be registered in accordance with SORNA as quickly as possible." *Id.* In particular the court found that "[d]elaying implementation of the regulation to accommodate notice and comment could reasonably be found to put the public safety at greater risk. *Id.* The court also noted that the Attorney General allowed post-promulgation comments, which were addressed in the proposed National Guidelines issued in May 2007 and in the final National Guidelines issued in May 2008. *Id.*

---

[2]*See also United States v. Dixon*, 551 F.3d 578, 583 (7th Cir. 2008) (noting in passing that Dixon's APA challenge to SORNA was "frivolous" but not discussing the challenge).

9

The Sixth Circuit disagreed in *United States v. Cain*, 583 F.3d 408 (6th Cir. 2009). The defendant in *Cain* was indicted for failing to register no more than 30 days after the February 27, 2007 effective date of the rule making SORNA retroactive. *Id.* at 411. The Sixth Circuit concluded that uncertainty was not good cause because every regulation is designed to provide some type of guidance. *Id.* at 421. It also concluded that Congress had already built in some amount of uncertainty and delay into the design of the statute. *Id.* The court highlighted the Attorney General's own seven-month delay in issuing the regulation. *Id.* The court concluded that Congress had already balanced the costs and benefits of delay in not exempting SORNA from APA procedures. *Id.* The court contrasted this situation with a situation where an agency is facing a statutory deadline. *Id.*

The *Cain* court then turned to the Attorney General's safety justification. *Id.* at 422. The court noted several cases where safety concerns justified bypassing the notice and comment period. *Id.* However, the court indicated that the safety concern had previously been used when the "emergency situation arose *after* the statutory enactment at issue." *Id.* It also noted that agencies have previously given specific reasons "to conclude that [their] regulations insufficiently protected public safety, and those reasons arose after the existing regulations went into effect." *Id.* The court concluded that the "Attorney General

10

gave no specific evidence of actual harm to the public in his conclusory statement of reasons, and gave no explanation for why he could act in an emergency fashion when Congress had not deemed the situation so critical seven months earlier." *Id.*

The *Cain* court also noted the dissent in *Gould* and indicated that it thought the dissent properly applied the APA. *Id.* It is noteworthy that the defendant in *Cain* was indicted for failing to register as early as March 28, 2007, which was less than 30 days after the effective date of the retroactivity rule, effective February 28, 2007. *Id.* at 411. The Sixth Circuit took "no position on whether the same would be true for a defendant who failed to register during a period more than thirty days after publication of the regulation." *Id.* at 424 n.7. Here, Dean was indicted in March 2008 for failing to register between July and August 2007, which was more than 30 days after the retroactivity rule's effective date. So part of *Cain*'s holding relating to § 553(d)(3) is inapplicable to this case. Nonetheless, we recognize that the Sixth Circuit subsequently has now extended *Cain* to apply to defendants even though the thirty-day advanced publication requirement is met. *See United States v. Utesch*, — F.3d —, 2010 WL 693288 (6th Cir. 2010). Dean adopts the *Cain* majority's and the *Gould* dissent's position.

We address the Attorney General's guidance argument first. We have addressed a somewhat similar guidance argument previously. In *United States*

11

*Steel Corp.*, the EPA alleged that an immediate rule without notice and comment was necessary to provide guidance to the states. 595 F.2d at 214. We found the need to provide guidance rationale faltered because States already had most of the information the EPA rule provided, the designations at issue were actually based on submissions by the States, and the EPA's role "is limited to reviewing the state designations and modifying them where necessary." *Id.*

In stark contrast, the agency here was granted sole discretion to determine whether SORNA applies retroactively, and there was no guidance at all in place in that matter. The guidance rationale is particularly important here as the persons who were affected by the rule were already convicted of their prior crimes and need to know whether to register. As the Fourth Circuit said, "[t]here was a need for legal certainty about SORNA's 'retroactive' application." *Gould*, 568 F.3d at 471. While this reason alone may not have established the good cause exception, it does count to some extent.

We do, however, find unpersuasive the argument that post-promulgation comments were sufficient to ameliorate the lack of pre-promulgation notice and comment. We previously rejected this harmless error argument in *United States Steel Corp.,* 595 F.2d at 214. In particular, we noted that "[s]ection 553 is designed to ensure that affected parties have an opportunity to participate in and

12

influence agency decision making at an early stage, when the agency is more likely to give real consideration to alternative ideas." *Id.* at 214. We held that allowing post-promulgation comments to resolve any harm caused by a lack of notice and comment would render the notice and comment provision toothless. *Id.* at 215. The post-promulgation comments allowed by the Attorney General do not rectify the lack of pre-promulgation notice and comment.

We now turn to the Attorney General's public safety justification. We conclude that the public safety argument advanced by the Attorney General is good cause for bypassing the notice and comment period. Retroactive application of the rule allowed the federal government to immediately start prosecuting sex offenders who failed to register in state registries. 73 Fed. Reg. at 38063. In practical terms, the retroactive rule reduced the risk of additional sexual assaults and sexual abuse by sex offenders by allowing federal authorities to apprehend and prosecute them. The retroactive application of SORNA also removes a barrier to timely apprehension of sex offenders.

The majority in *Cain* reads two cases, one from the D.C. Circuit and one from the Ninth Circuit, to hold that the safety prong of the good cause exception can only be invoked in emergency situations. *See Cain*, 583 F.3d at 422. However, the D.C. Circuit has noted that "the exception excuses notice and

comment in emergency situations, *or* where delay could result in serious harm."

*Jifry*, 370 F.3d at 1179 (citation omitted and emphasis added). Similarly, the

Ninth Circuit has noted that "notice and comment procedures should be waived

only when delay would do real harm. Emergencies, though not the only situations

constituting good cause, are the most common." *Natural Resources Defense*

*Council, Inc. v. Evans*, 316 F.3d 904, 910 (9th Cir. 2003) (citations and quotation

marks omitted). Both of these decisions are consistent with our precedent in

*United States Steel Corp.*, where we indicated that the good cause exceptions were

"to be used where delay would do real harm." 595 F.2d at 214. We hold that

there does not need to be an emergency situation and the Attorney General only

has to show that there is good cause to believe that delay would do real harm.

The dissent in *Gould* argues the retroactive application of SORNA does not

improve public safety because it does not compel additional registration and

"merely allowed the federal government to prosecute under SORNA sex offenders

who were currently violating state registration laws." *Gould*, 568 F.3d at 478

(Michael, J., dissenting). This argument is premised on the notion that those who

failed to register are subject to state prosecution already, and that is sufficient for

public safety. We are not persuaded. Public safety is improved by federal law that

allows the federal government to pursue sex offenders regardless of existing state

14

laws providing for state prosecution. SORNA brings to bear the power of federal law enforcement, including the United States Marshals Service, to assist in locating and apprehending sex offenders who fail to register. *See* 42 U.S.C. § 16941. The additional criminal sanction also increases the likelihood of registration. Furthermore, Congress has already made the judgment that a federal law for tracking sex offenders, in addition to existing state law, would improve public safety.

Another argument advanced in the *Gould* dissent is that Megan's Law, 42 U.S.C. § 14071, sufficiently protects public safety because it allows the federal government to prosecute sex offenders who fail to register under a state's sexual offender registration program and who change their address to another state. *See* 42 U.S.C. § 14072(g); *Gould*, 568 F.3d at 477-78 (Michael, J., dissenting). But Megan's Law's scope is substantially narrower and less comprehensive than SORNA's.

First, SORNA expands the definition of sex offender to include previously uncovered offenders including foreign offenders and some juvenile offenders. *Compare* 42 U.S.C. §§ 16911(5), (7), (8) *with* 42 U.S.C. § 14071(3). Second, the penalties imposed under Megan's Law are substantially more lenient than the penalties under SORNA. The penalty for a violation of Megan's Law is a

maximum of one year in prison for the first offense and ten years for second and subsequent offenses. 42 U.S.C. § 14072(i). SORNA's penalty provision allows for a maximum of ten years' imprisonment regardless. 18 U.S.C. § 2250(a)(3). SORNA also adds additional punishment if the sex offender commits a crime of violence. This additional punishment is a mandatory minimum of five years in prison with a statutory maximum of 30 years. 18 U.S.C. § 2250(c). These distinctions make SORNA a farther reaching statute and increase public safety.

The majority in *Cain* also reasoned that Congress built in a period of delay and the Attorney General delayed seven-months; therefore delay cannot constitute good cause. *Cain*, 583 F.3d at 421. We disagree. All Congressional directives to an agency to implement rules are subject to delay as the agency considers the rule and then promulgates it. If Congress were required to create the substantive administrative rules by itself to avoid notice and comment, then the good cause exception would be meaningless. An agency could never demonstrate good cause since delay is inevitably built in as the agency brings its expertise to bear on the issue. The question is whether further delay will cause harm, and here it was reasonably determined that waiting thirty additional days for the notice and comment period to pass would do real harm.

The final argument advanced against bypassing notice and comment is that

16

"the harm to the general public would result from delay assumes that it was inevitable that [the Attorney General] would declare that SORNA applied retroactively. *See Gould,* 568 F.3d at 479 (Michael, J., dissenting). This is true of any rule that bypasses the notice and comment provision. The harm to the public from delay is premised on the promulgated rule staying as is even through the notice and comment phase. This argument is also premised on the idea that the rule creates the harm. *Id.* (arguing that "[i]f the Attorney General had promulgated a rule that SORNA does *not* apply to past sex offenders . . ., no possible harm to the public would have resulted). However, the harm exists already. Sex offenders are not registering with state jurisdictions. Since the good cause exception already assumes that the regulation will remain in place, this argument is not a reason to reject an invocation of the exception.

The Attorney General had good cause to bypass the Administrative Procedure Act's notice and comment requirement.

AFFIRMED.

WILSON, Circuit Judge, concurring in the result:

The Attorney General failed to show good cause to avoid the notice and comment requirements of the Administrative Procedure Act. At oral argument, the government conceded that at the time of his arrest Dean could have been charged with failing to register under either of two existing laws. The first was the Alabama law that provides for up to ten years in prison[1]—a sentence as long as the one provided by SORNA. The second was "Megan's Law," the federal law that provides for up to one year in prison.[2] The government's concession highlights the lack of an emergency or threat of real harm attending the promulgation of the regulation. There was little if any support for the Attorney General's public safety justification that notice and comment "would impair immediate efforts to protect the public from sex offenders who fail to register *through prosecution and the*

---

[1] Community Notification Act, Ala.Code § 15-20-20 *et seq*. Since 2005, § 15-20-23(a) has made the failure to register a Class C felony, which is punished by between one year and one day, and ten years in prison, Ala.Code § 13A-5-6(a)(3).

[2] Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, 42 U.S.C. § 14071 *et seq.*, was amended May 17, 1996 by Pub. L. No. 104-145, 110 Stat. 1345 ("Megan's Law"). For simplicity's sake, I will hereafter refer to this amended statute as Megan's Law. Since 1998, 42 U.S.C. § 14072(i) has provided for up to one year imprisonment for the first offense of knowingly *inter alia* failing to register in a new state within ten days of moving there from a state in which registration had been required, 42 U.S.C. § 14072(g)(3)(A)–(B). The second offense carries up to ten years in prison. *Id.* § 14072(i)(4).

*imposition of criminal sanctions*."[3] The issue is not whether sex offenders should register, but rather whether the addition of one more layer of federal protection atop a substantial quilt of existing state and federal laws merited emergency treatment. Administrative law imposes the doctrine of harmless error, however, and because I conclude Dean suffered no prejudice, I concur with the majority's decision to uphold his conviction.

I. *The Attorney General's Claims of Emergency Fell Short*

While I take seriously Congress's mandate that sex offenders register their whereabouts, I accord equal respect to Congress's requirement that executive agencies provide notice and accept comment before binding this nation with their rules. The majority opinion quotes but does not give due weight to our circuit's law requiring us to construe narrowly the good cause exceptions to notice and comment.[4] As I stated above, the existence of stringent state and federal criminal sanctions on the books at the time the regulation was promulgated obviated the

---

[3] Applicability of the Sex Offender Registration and Notification Act, 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007) (codified at 28 C.F.R. § 72.3) (emphasis added). Likewise, at oral argument, the government stated that "protection of the public" was the best argument for avoiding notice and comment.

[4] To be precise, I note that there are two "good cause" exceptions at issue here, and that courts have sometimes held the more detailed one for notice-and-comment at 5 U.S.C. § 553(b)(3)(B) to be more demanding than the one for pre-enactment waiting period at § 553(d)(3). *Am. Fed'n of Gov't Employees v. Block*, 655 F.2d 1153, 1156 (D.C. Cir. 1981). The difference is not material here.

case for an emergency.[5]  Indeed, every state already had its own registration law.[6]

Moreover, the majority opinion misapprehends the legal apparatus of sex offender registration and the federal government's role in it.

The majority opinion cites "the power of federal law enforcement, including the United States Marshals Service," as a reason to augment the federal prosecutorial arsenal without notice and comment.  But in this case the Prattville Police Department received the initial tip about Dean and arrested him.  That local and not federal law enforcement made the case is hardly anomalous.  Local and state law enforcement shoulder much of the burden of registering and tracking sex

---

[5]  It was noted at oral argument that the APA does not use or define the word emergency for these purposes.  The word does appear in the case law.  *See, e.g.*, *Block*, 655 F.2d at 1154; *Am. Trucking Ass'n, Inc. v. U.S.*, 688 F.2d 1337, 1348 (11th Cir. 1982), *rev'd on other grounds sub nom. I.C.C. v. Am. Trucking Ass'ns, Inc.*, 467 U.S. 354, 371, 104 S. Ct. 2458, 2467 (1984).  This fine point does not change my analysis.  Whether one uses the label emergency, threat of real harm, threat of serious harm, or good cause, the same essential question abides: what facts did the Attorney General present as creating a good reason to bypass notice and comment?

[6]  Press Release, U.S. Dep't of Justice, Department of Justice Announces Final National Guidelines for Sex Offender Registration and Notification (July 1, 2008), *available at* http://www.ojp.gov/newsroom/pressreleases/2008/smart08019.htm.  Perhaps this fact helps explain why few states have so far made their programs compliant with SORNA—only Ohio and the Umatilla and Yakama confederated tribes have done so.  Office of Justice Programs, U.S. Dep't of Justice, SMART Office Highlights, http://www.ojp.usdoj.gov/smart/ (last visited Apr. 12, 2010).  In passing SORNA, Congress gave the states three years to comply, with up to two one-year extensions in the discretion of the Attorney General.  42 U.S.C. § 16924.  The Attorney General granted the first one-year extension on May 26, 2009.  Order No. 3081-2009.  To be sure, our circuit has carefully distinguished a state's SORNA obligation to comply from an individual sex offender's SORNA obligation to register, *United States v. Brown*, 586 F.3d 1342, 1348–49 (11th Cir. 2009).  Yet neither *Brown*, nor the plain text of SORNA, nor the states' slow progress toward compliance, reveal anything suggesting emergency treatment for the regulation.

offenders.[7]  In the last fifteen years, Congress has stepped up its role, but no one would argue Congress took over the job from the states.  In any event, had the U.S. Marshals found Dean first, they were already empowered to charge him under Megan's Law.  While SORNA undoubtedly offers benefits unique to a nationwide clearinghouse of information, the U.S. Marshals offer no systemic punch to SORNA, much less assistance justifying the avoidance of notice and comment.

The emergencies cited by the majority opinion highlight the extent to which this case did not present an emergency or threat of real harm.  One example given was price controls.  Advance notice of price controls is harmful precisely because the advance notice spurs people to price-gouge, hoard, and engage in all the other market dysfunctions that price controls are supposed to cure in the first place.  *See U.S. Steel Corp. v. EPA*, 595 F.2d 207, 214 n.15 (5th Cir. 1979), *reh'g granted*, 598 F.2d 915, 916 (5th Cir. 1979).  While no one here has suggested, of course,

---

[7] Indeed, for every sex offender in a federal prison, there are at least ten in state prisons. *Compare* Federal Bureau of Prisons, *Quick Facts About the Bureau of Prisons*, http://www.bop.gov/about/facts.jsp#4  (last updated Feb. 27, 2010) (noting 7,900 federal prisoners with convictions for sex offenses), *with* Lawrence A. Greenfeld, Bureau of Justice Statistics, U.S. Dep't of Justice, *Sex Offenses and Offenders* 22 (1997), *available at* http://bjs.ojp.usdoj.gov/content/pub/pdf/SOO.PDF (estimating 88,100 state prisoners in 1994 for rape and sexual assault convictions).  Federal authorities rely on the state registration systems in numerous ways.  For example, in this case and in other SORNA appeals, the government routinely cites the notices provided by state sex offender registration programs as sufficient to defeat defendant's due process challenges.  *See, e.g.*, Appellee's Br. 13 n.11; *Brown*, 586 F.3d at 1351.

21

that advance notice of the regulation would aggravate the problem of unregistered sex offenders, the Attorney General has failed to explain why rushed promulgation would solve the problem. In short, the example of price controls does not help the government here.

Other emergencies that other courts have upheld as a basis for good cause—a problem arising *after* the passage of a statute, such as a rash of tour helicopter accidents claiming four lives, *Haw. Helicopter Operators Ass'n v. FAA*, 51 F.3d 212, 214 (9th Cir. 1995) (quoting *U.S. Steel*, 595 F.2d at 214); or a daycare food rule passed under clear pressure from Congress for quick action, *Petry v. Block*, 737 F.2d 1193, 1200–01 (D.C. Cir. 1984)—also fail to track the facts here. Thus, the Attorney General's case for an emergency or threat of serious harm should be rejected. The good-cause exception, my late colleague Judge Godbold wrote, should not be used "to circumvent the notice and comment requirements whenever an agency finds it inconvenient to follow them." *U.S. Steel*, 595 F.2d at 214.[8]

---

[8] The majority opinion gave little credit to another justification from the Attorney General: a desire to provide guidance justified emergency treatment. The argument may not deserve even that much credit. In his powerful dissent in *United States v. Gould*, Judge Michael noted that an agency that wishes to eliminate uncertainty should not label its regulation an "interim rule" or issue a call for post-promulgation comments, "because the possibility of an alteration to the interim rule after its promulgation *increases* rather than eliminates uncertainty." 568 F.3d 459, 479 (4th Cir. 2009) (Michael, J., dissenting).

The majority opinion, in trying to shore up the Attorney General's case, also asserts that there was good cause to avoid notice and comment because SORNA substantially expanded the Megan's Law definition of covered offenses. The definition is hardly anemic, however, notwithstanding the majority opinion's description of it as "substantially narrower and less comprehensive" than SORNA's.[9] The

---

[9] Megan's Law provides that:

(A) The term "criminal offense against a victim who is a minor" means any criminal offense in a range of offenses specified by State law which is comparable to or which exceeds the following range of offenses:

(i) kidnapping of a minor, except by a parent;

(ii) false imprisonment of a minor, except by a parent;

(iii) criminal sexual conduct toward a minor;

(iv) solicitation of a minor to engage in sexual conduct;

(v) use of a minor in a sexual performance;

(vi) solicitation of a minor to practice prostitution;

(vii) any conduct that by its nature is a sexual offense against a minor;

(viii) production or distribution of child pornography, as described in section 2251, 2252, or 2252A of Title 18; or

(ix) an attempt to commit an offense described in any of clauses (i) through (vii), if the State--

(I) makes such an attempt a criminal offense; and

(II) chooses to include such an offense in those which are criminal

23

Attorney General, on the other hand, described the SORNA revisions as strengthening and increasing the effectiveness of sex offender registration, and eliminating "potential gaps and loopholes under the pre-existing standards." 72 Fed. Reg. at 8895. Such language bespeaks a fine-tuning, not an emergency. The majority opinion cites the addition of foreign and some juvenile offenders—an expansion, to be sure, but hardly a sea change. While I am fully aware of the generally expansive nature of SORNA,[10] my point is that expansion by itself does

offenses against a victim who is a minor for the purposes of this section.

For purposes of this subparagraph conduct which is criminal only because of the age of the victim shall not be considered a criminal offense if the perpetrator is 18 years of age or younger.

(B) The term "sexually violent offense" means any criminal offense in a range of offenses specified by State law which is comparable to or which exceeds the range of offenses encompassed by aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18 or as described in the State criminal code) or an offense that has as its elements engaging in physical contact with another person with intent to commit aggravated sexual abuse or sexual abuse (as described in such sections of Title 18 or as described in the State criminal code).

(C) The term "sexually violent predator" means a person who has been convicted of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

...

42 U.S.C. § 14071(a)(3).

[10] Indeed, my colleagues largely share my view of the broader, expansive scope of SORNA. *See, e.g.*, *United States v. Dodge*, 11th Cir. 2010, __ F.3d __ (No. 08-10802, March 5, 2010) (en banc) (upholding SORNA registration requirement for an unenumerated conviction under noncategorical analysis, and noting the expansive nature of SORNA's definitions of

24

not equal emergency.

The majority opinion also touts the sharp increase in federal penalty, to ten years under SORNA from one year under Megan's Law, as a justification for avoiding notice and comment. This argument actually cuts against the government, which has no reply to Dean's bedrock point that notice is particularly important in matters of criminal liability.[11] "Certainly, a criminal prosecution founded on an agency rule should be held to the strict letter of the APA." *United States v. Picciotto*, 875 F.2d 345, 346 (D.C. Cir. 1989). "[T]he purpose of the thirty-day waiting period is to give affected parties a reasonable time to adjust their behavior before the final rule takes effect." *Omnipoint Corp. v. FCC*, 78 F.3d 620, 630 (D.C. Cir. 1996).[12]

Yet, on the day after the Attorney General promulgated its regulation, sex offenders likely had no clue that their maximum federal penalties for failing to register had increased overnight from one year to ten. Likewise, many people who

qualifying offenses).

[11] In so saying I imply no tolerance for Dean's despicable acts. Dean was convicted of third-degree sexual misconduct in Minnesota in 1994 for sexually abusing his step-daughter over a period of years. Change-of-Plea Tr. 8; Sentencing Tr. 13.

[12] Moreover, in *United States v. Cain*, the Sixth Circuit struck down a SORNA failure-to-register conviction of a man charged twenty-eight days after rule was promulgated. The court wrote: "We are aware of no case, other than *Gould*, in which a circuit court has upheld a criminal conviction based on a regulation promulgated without thirty days' advance notice." 583 F.3d 408, 423–24 (6th Cir. 2009).

had no obligation to register under Megan's Law now faced federal prison time, if I grant the majority opinion's point that SORNA greatly expanded the pool of sex offenders eligible for registration.[13]  I agree with the majority opinion that the arbitrary-and-capricious standard probably governs review of the agency action here,[14] and I acknowledge that the standard is deferential.  At the same time,  I note the practical ease of denying convicted sex offenders the right to receive notice that overnight their federal criminal penalties for failing to register had increased tenfold.

The Attorney General's statement in the Federal Register concluded that it

[13]  I note that the majority opinion's arguments for good cause on the basis of extra help from the U.S. Marshals, and the expanded scope and enhanced penalties of SORNA, do not explicitly appear in the 400-word justification that the APA required the Attorney General to publish as a condition of good cause.  Those arguments are at best implicit in the Attorney General's justification.  *See* 72 Fed. Reg. at 8896–8897.  Courts are not supposed to help an administrative agency make its case when the agency by itself cannot.  In concluding that the Department of Transportation's explanation of its air-bag rule rescission was lacking, such that the agency acted arbitrarily and capriciously, the Supreme Court wrote in *State Farm* that "[t]he reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2867 (1983) (citation omitted).

[14]  *See, e.g.*, *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 911 (11th Cir. 2007) ("Agency action is considered arbitrary or capricious if the agency has 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'") (quoting *State Farm*, 463 U.S. at 43, 103 S. Ct. at 2867).  At the same time, a reviewing court is not authorized to substitute its judgment for the agency's "concerning the wisdom or prudence of the proposed action." *N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1539 (11th Cir. 1990).

would "accordingly be contrary to the public interest" to provide notice and comment under § 553(b)–(c) or the 30-day pre-enactment waiting period under § 553(d). 72 Fed. Reg. at 8897. But the Attorney General's own APA manual describes the public-interest exception as one "in which the interest of the public would be defeated by any requirement of advance notice." *Util. Solid Waste Activities Group v. EPA*, 236 F.3d 749, 755 (D.C. Cir. 2001) (quoting U.S. Dep't of Justice, *Attorney General's Manual on the Administrative Procedure Act* 31 (1947)). The example the manual gives to illustrate the public-interest exception is price controls, which as I have discussed does not help the government here. In sum, the Attorney General failed to show good cause to avoid notice and comment.

## II. *In Passing SORNA, Congress Factored in Delay*

The bottom line is that Congress factored delay into SORNA when it wrote the law. To this point the majority opinion has no good reply. In drafting SORNA Congress clearly took the larger view on the problem of unregistered sex offenders. Congress unquestionably had the power to release the Attorney General from the requirements of the APA. *See Asiana Airlines v. FAA*, 134 F.3d 393, 398 (D.C. Cir. 1998). Indeed, Congress could have decided on its own to make SORNA apply to pre-enactment convictions, instead of delegating that

27

decision to the Attorney General.[15]  Congress however unambiguously declined to

adopt either option.  Congress balanced the costs and benefits of allowing the

Attorney General to determine SORNA's pre-enactment reach, and in doing so it

countenanced the inevitable delays of administrative rulemaking.  *See Cain*, 583

F.3d at 421; *Gould*, 568 F.3d at 480–81 (Michael, J., dissenting).  Notably, the

Attorney General took seven months from the passage of SORNA to publish its

interim rule.  Yet that time-span is absent from the Attorney General's claims of

emergency timing.  What's more, Congress's allocation of three years, plus

extensions, to the states to comply with SORNA means Congress did not perceive

an emergency.  In short, the intent of Congress as captured in the plain words of

SORNA was *not* to relieve the Attorney General of the requirement for notice and

comment.

---

[15]  In *United States v. Madera*, a panel of this Court held that SORNA did not apply to pre-enactment sex offenses until the Attorney General issued its regulation saying as much.  528 F.3d 852, 857 (11th Cir. 2008) (per curiam).  The Fourth, Sixth, and Seventh Circuits agreed. *United States v. Hatcher*, 560 F.3d 222, 226–229 (4th Cir. 2009); *United States v. Cain*, 583 F.3d 408, 414–19 (6th Cir. 2009); *United States v. Dixon*, 551 F.3d 578, 582 (7th Cir. 2008), *cert. granted sub nom. Carr v. United States*, 130 S. Ct. 47 (2009), *argued*, No. 08-1301 (Feb. 24, 2010).  However, the Eighth Circuit and the Tenth Circuit, as well as the Attorney General himself, concluded that on the face of SORNA's text, SORNA applied to earlier convictions at the moment of its passage, and that therefore the Attorney General's regulation served only to clarify rather than to impose new liability.  *United States v. Hinckley*, 550 F.3d 926, 929–35 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 2383 (2009) (agreeing with the Attorney General's interpretation); *United States* v. *May*, 535 F.3d 912, 916–19 (8th Cir. 2008), *cert. denied*, 129 S. Ct. 2431 (2009) (same); Applicability of the Sex Offender Registration and Notification Act, 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007) (codified at 28 C.F.R. § 72.3).

*III.    Harmless Error Analysis Dooms Dean's Appeal*

Here, however, Dean's argument falters.  I concur in the result upholding

his conviction because another, equally potent requirement of the APA compels it:

harmless error review.  The passage of five months between promulgation of the

regulation and Dean's arrest rendered harmless the lack of pre-enactment notice

and comment.

"In administrative law, as in federal civil and criminal litigation, there is a

harmless error rule."[16]  The APA instructs reviewing courts to take "due account . .

. of the rule of prejudicial error."  5 U.S.C. § 706.  "If the agency's mistake did not

affect the outcome, if it did not prejudice the petitioner, it would be senseless to

vacate and remand for reconsideration."  *PDK Labs. Inc. v. DEA*, 362 F.3d 786,

799 (D.C. Cir. 2004).  Dean claims prejudice—that without a valid regulation,

there was no basis to charge him in the first place.  The analysis however is

narrower.  Reversal is not necessary when the error has "no bearing on the

procedure used or the substance of decision reached."  *Braniff Airways, Inc. v.

C.A.B.*, 379 F.2d 453, 466 (D.C. Cir. 1967) (quotation omitted).  Because Dean

would stand to benefit here from two parts of the APA—the notice and comment

---

[16]  *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 659–60, 127 S.
Ct. 2518, 2530 (2007) (Alito, J.) (quoting *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir.
2004)).

provisions of § 553(b)–(c), and the pre-enactment waiting period of § 553(d)—I discuss any prejudice to him caused by the avoidance of each in turn.

I deal first with the more straightforward issue of pre-enactment delay. Section 553(d) requires a 30-day lead time from notice to effective date. Here, five months elapsed between promulgation of the regulation and Dean's arrest.[17] Even if the Attorney General had no good cause to waive § 553(d), Dean was not prejudiced.

The prejudice analysis for notice and comment involves more. The burden is on Dean as a petitioner to show that, had he had an opportunity for pre-promulgation comment under § 553(c), he could have arguably mounted a "credible challenge" for changing the rule as it affected him. *Utility Solid Waste*, 236 F.3d at 755 ("Petitioners have presented enough to show that on remand they can mount a credible challenge to the amended rule and were thus prejudiced by the absence of an opportunity to do so before the amendment."). And there was nothing in Dean's appellate briefs or his counsel's presentation at oral argument that suggested a reason he could have offered that might have persuaded the Attorney General not to extend SORNA to cover pre-enactment convictions.

---

[17] At this point I go past the Sixth Circuit in *Cain*, which explicitly took no position regarding a conviction for failing to register during a time more than thirty days after publication of the regulation. 583 F.3d at 424 n.7.

The Attorney General did accept post-promulgation comment here, but in *U.S. Steel* this Court found that post-promulgation comment did not cure a failure to provide pre-promulgation comment. 595 F.2d at 214–15. In *U.S. Steel*, this Court also denied harmless error analysis to the EPA. *Id.* at 215. However, *U.S. Steel* did not flatly rule out harmless error analysis. It was still available to an agency, as long as the petitioner failed to show any prejudice. "Absence of such prejudice must be clear for harmless error to be applicable." *Id.*

Moreover, the facts of *U.S. Steel* differed significantly. In *U.S. Steel*, Alabama steel plants were denied the opportunity to comment on EPA air-quality rulings that had the effect of limiting their ability to expand. Determinations of air quality and pollution sources naturally involve complex scientific issues open to various interpretations. Comment from regulated entities is therefore more likely to have an impact on ultimate agency decisions. Here, though, the decision of the Attorney General, as far as Dean cared, was binary—either someone with a pre-enactment offense could be charged, or he couldn't be. The starker choice increases Dean's burden to show how he might have changed the deliberation. In the absence of any suggestion from Dean how his comments might have changed the outcome, the sounder conclusion here is that Dean incurred no prejudice from

31

the Attorney General's failure to accept pre-promulgation comments.[18]

Additional legal authority supports the conclusion that Dean suffered no prejudice because he didn't show what comment he might have made on the interim rule. *See, e.g., Air Transp. Ass'n of Am. v. C.A.B.*, 732 F.2d 219, 224 n.11 (D.C. Cir. 1984) (panel including then-Judge Scalia) (finding harmless error where petitioner "[did] not explain what it would have said" had it been given earlier access to staff studies); *Steel Mfrs. Ass'n v. EPA*, 27 F.3d 642, 649 (D.C. Cir. 1994) (per curiam) (finding that denial of comment was harmless error when the agency had "adequate and independent grounds" for the standard it set).  And, in 1995 the Administrative Conference of the United States made this recommendation regarding "good cause" exceptions:

> Where an agency has used post-promulgation comment procedures, responded to significant adverse comments and ratified or modified the rule as appropriate, the Conference suggests that a reviewing court generally should not set aside that ratified or modified rule solely on the basis that adequate good cause did not exist to support invoking the exemption initially.  At this stage, the agency's initial flawed finding of good cause should normally be treated as harmless

---

[18]  The final regulation, issued by the Attorney General almost a year after Dean's arrest, changed little in essential respects.  *See* National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030 (July 2, 2008).  The final Guidelines reflected numerous small changes made in response to adverse comments about retroactivity, *id.* at 38031, and treatment of juveniles and tribal issues, *id.* at 38030, among other topics.

error with respect to the validity of the ratified or modified rule.[19]

I suggest that these authorities counsel a decision here to uphold the Attorney General's interim rule.[20]

## IV. Conclusion

I conclude that while the Attorney General failed to show good cause to avoid notice and comment, I must find such error harmless, and therefore Dean's conviction should stand.[21] I recognize that in doing so, I stake out a third position, one different from both sides of the current split between the Fourth, Seventh, and Eleventh Circuits on the one side, and the Sixth Circuit. The Supreme Court

---

[19] Adoption of Recommendations, Recommendation 83-2, "The 'Good Cause' Exemption from APA Rulemaking Requirements," 60 Fed. Reg. 43108, 43112 (Aug 18, 1995). From its founding in 1961, the Administrative Conference of the United States issued recommendations intended to improve administrative law. Justice Scalia served as chair of the conference from 1972 to 1974, and Justice Breyer was a conference member from 1990 to 1994. Congress stripped the conference of its funding in 1995. President Obama recently decided to reinstate the conference.

[20] The Sixth Circuit did not discuss harmless error in *United States v. Cain*, although its holding is consistent with a finding of prejudice regarding § 553(d) pre-enactment delay. Another panel of the Sixth Circuit did discuss harmless error in *United States v. Utesch*, 596 F.3d 302, 311–13 (6th Cir. 2010), a case that extended *Cain*'s rationale to a defendant indicted seven months after the regulation was promulgated. But the *Utesch* discussion lacks an analysis of prejudice.

[21] Our Court held in *United States v. Madera* that without a valid regulation, a SORNA conviction for failing to register for a pre-enactment sex offense could not stand. 528 F.3d at 859. But because I uphold the regulation on harmless error grounds, *Madera* does not block Dean's prosecution. I also note that *Madera* is factually distinguishable from the instant case because the defendant there was arrested four months before the Attorney General issued the regulation. *Id.* at 854.

should resolve these differences.

I am troubled by the precedent the majority opinion sets today. It is now easier for an administrative agency to avoid notice and comment in our circuit by claiming an emergency or threat of serious harm, whether or not the facts support one. As Dean's counsel pointed out at oral argument, today's holding will apply to APA appeals unrelated to SORNA.

For these reasons, I concur in the result.