REENA RAGGI, Circuit Judge,
concurring:
I join in the court’s opinion holding that the text and structure of the federal Sex Offender Registration and Notification Act (“SORNA”), 42 U.S.C. § 16901 et seq., are unambiguous in providing for SORNA’s registration requirements to take effect on the date of its enactment to persons previously convicted of predicate sex offenses. I write separately only to explain that I think the alternate construction urged by defendant — identifying ambiguity as to whether § 16913(d) vests the Attorney General with authority to determine whether, and not simply how, SORNA applied to sex offenders convicted before SORNA’s enactment — is, in any event, foreclosed by the rule of constitutional avoidance, as such a construction would, to my mind, raise concerns about the delegation of legislative authority to the executive branch.
1. Constitutional Avoidance
The rule of constitutional avoidance states that “where an otherwise acceptable construction of a statute would raise serious constitutional problems,” a court must “construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.” United States v. Magassouba, 544 F.3d 387, 404 (2d Cir.2008) (internal quotation marks omitted). This canon of construction is a “tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts.” Clark v. Martinez, 543 U.S. 371, 381, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005).[1]
*509 2. Non-Delegation
The Constitution provides that “[a]ll legislative Powers herein granted shall be vested in a Congress of the United States.” U.S. Const, art. I, § 1 (emphasis added). Consistent with this text and the principle of separation of powers, the non-delegation doctrine generally permits “no delegation” of legislative powers to another branch of government. Whitman v. Am. Trucking Ass’ns, 581 U.S. 457, 472, 121 S.Ct. 908, 149 L.Ed.2d 1 (2001); see also Mistretta v. United States, 488 U.S. 361, 371-72, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Among Congress’s legislative powers is the authority to determine the temporal scope of a statute. See, e.g., City of New York v. Permanent Mission of India to the U.N., 618 F.3d 172, 195 (2d Cir.2010) (recognizing Congress’s “ ‘responsibility for fundamental policy judgments concerning the proper temporal reach of statutes’ ” (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 273, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994))). That determination is particularly significant with respect to statutes exposing persons to criminal liability. Here, a decision as to the application of SORNA registration requirements to persons convicted of sex offenses before enactment of the statute could expand or contract the class subject to possible criminal prosecution for non-compliance by more than half a million. See 152 Cong. Rec. S8012, 8013 (daily ed. July 20, 2006) (statement of Sen. Hatch) (estimating over 500,000 persons convicted of predicate sex offenses prior to enactment of SORNA); 152 Cong. Rec. H5705, 5722 (daily ed. July 25, 2006) (statement of Rep. Sensenbrenner) (same).
In exercising legislative authority, Congress is permitted to “seek[] assistance, within proper limits, from its coordinate Branches.” Touby v. United States, 500 U.S. 160, 165, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991). To stay within constitutional limits, however, a delegation of congressional authority to a coordinate branch must “lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform.” J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409, 48 S.Ct. 348, 72 L.Ed. 624 (1928); accord Touby v. United States, 500 U.S. at 165, 111 S.Ct. 1752. Put another way, a delegation is “constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.” American Power & Light Co. v. SEC, 329 U.S. 90, 105, 67 S.Ct. 133, 91 L.Ed. 103 (1946); accord Mistretta v. United States, 488 U.S. at 372-73, 109 S.Ct. 647.
*510 In the eighty years since the Supreme Court first articulated the “intelligible principle” requirement, it has broadly construed Congress’s ability to delegate power, striking down only two statutes for impermissible delegation, both in 1935. See A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935). The Court nonetheless continues to subject congressional acts of delegation to constitutional scrutiny, see, e.g., Whitman v. Am. Trucking Ass’ns, 531 U.S. 457, 121 S.Ct. 903; Touby v. United States, 500 U.S. 160, 111 S.Ct. 1752, and it has frequently invoked the rule of constitutional avoidance in construing statutes to avoid serious delegation questions, see, e.g., Industrial Union Dep’t. AFL-CIO v. Am. Petroleum Inst., 448 U.S. 607, 646, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980) (rejecting interpretation of Occupational Safety and Health Act as making “such a ‘sweeping delegation of legislative power’ that it might be unconstitutional under the Court’s reasoning in A.L.A. Schechter Poultry Corp. v. United States ... and Panama Refining Co. v. Ryan.... A construction of the statute that avoids this kind of open-ended grant should certainly be favored.”); see also National Cable Television Ass’n v. United States, 415 U.S. 336, 340-42, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974); Kent v. Dulles, 357 U.S. 116, 129-30, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958).
3. The Delegation Concerns Raised by Defendant’s Interpretation of SORNA
Title 42 U.S.C. § 16913(d) states:
The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.
Defendant argues that the first clause can be construed to empower the Attorney General to decide whether — rather than simply how — the subchapter’s requirements apply to sex offenders whose predicate convictions predate SORNA’s enactment. I think this construction must be rejected on avoidance grounds because I do not see that Congress provided any intelligible principle in the statute to guide the Attorney General in exercising such putative delegated legislative authority.
In United States v. Guzman, 591 F.3d 83 (2d Cir.2010), this court identified no such concern, ruling that the Attorney General’s exercise of legislative authority was “highly circumscribed” by SORNA provisions identifying the crimes requiring registration, the “where, when, and how” of registration, the information required of registrants, and the elements and penalties for the federal crime of failure to register. Id. at 93 (citing 42 U.S.C. §§ 16911, 16913-14, 18 U.S.C. § 2250).[2] Guzman also observed that the Attorney General’s power under § 16913(d) would extend only “to the limited class of individuals who were convicted of covered sex offenses prior to SORNA’s enactment; the Attorney General cannot do much more than simply determine whether or not SORNA applies to those individuals.” Id.
In reaching the same conclusion, a panel of the Eleventh Circuit relied upon the detailed statutory specifications identified *511 in Guzman, and also noted that “Congress has undeniably provided the Attorney General with a policy framework in § 16901 to guide his exercise of discretion under § 16918(d),” by building the following statement of legislative purpose into the statute: “ ‘In order to protect the public from sex offenders and offenders against children, ... Congress in this chapter establishes a comprehensive national system for the registration of those offenders.’ ” United States v. Ambert, 561 F.3d 1202, 1213-14 (11th Cir.2009) (quoting 42 U.S.C. § 16901).
I agree that the SORNA provisions cited in Guzman and Ambert indicate how persons to whom the statute applies may satisfy its requirements or be prosecuted for failing to do so. But I respectfully fail to see what guidance these provisions provide to the Attorney General in exercising legislative authority to decide whether or not SORNA’s registration requirements should apply to prior offenders at all. See, e.g., United States v. Madera, 528 F.3d 852, 858 (11th Cir.2008) (adopting broad interpretation of § 16913(d)’s delegation, and noting Attorney General’s “unfettered discretion to determine both how and whether SORNA was to be retroactively applied” (first emphasis added)). Nor does the statutory purpose of creating a “comprehensive national system” for registration, 42 U.S.C. § 16901; see United States v. Ambert, 561 F.3d at 1213-14, hint as to what factors, if any, might counsel against applying the Act’s registration requirements to prior offenders. The Attorney General could simply flip a coin, and thereby make the more than 500,000 persons convicted of sex offenses before July 27, 2006, subject to SORNA’s registration requirements — or not. I am not alone in noting such a delegation concern with the construction of § 16913(d) urged by defendant:
Without any discernible principle to guide him or her in the statute, the Attorney General could, willy nilly, a) require every single one of the estimated half million sex offenders in the nation to register under SORNA, b) through inaction, leave each of those half million offenders exempt from SORNA, c) do anything in between those two extremes, or d) change his or her mind on this question, making the statute variously prospective and retroactive, as administrative agencies are normally entitled to do when Congress delegates interpretive questions to them.
United States v. Hinckley, 550 F.3d 926, 948 (10th Cir.2008) (Gorsuch, J., concurring) (citation omitted).
I do not think these concerns are dispelled by the fact that the Attorney General’s authority under § 16913(d) would apply only “to a particular, capped class of offenders.” United States v. Ambert, 561 F.3d at 1214; see also United States v. Guzman, 591 F.3d at 93 (noting authority applies only to “limited class of individuals”). A delegation of authority to determine the potential criminal exposure of half a million people cannot be deemed narrow. In any event, the non-delegation doctrine requires, not that the delegated authority be narrow in the scope of its application, but rather that Congress provide an “intelligible principle” to guide its exercise. I do not think SORNA provides such a principle.
The identified constitutional concern with defendant’s construction of § 16913(d) is further aggravated by the fact that it presumes that Congress, without providing any meaningful guidance, delegated to the Attorney General, the very officer charged with executive power to enforce the criminal laws, the legislative power unilaterally to pronounce the scope of a law with crimi *512 nal consequences. Cf. Buckley v. Valeo, 424 U.S. 1, 139, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (“Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions.” (internal quotation marks omitted)); Mistretta v. United States, 488 U.S. at 391 n. 17, 109 S.Ct. 647 (recognizing that uniting power to prosecute and power to sentence in executive would raise constitutional concerns). This I expect is why the Supreme Court has suggested, even if not decided, that “greater congressional specificity” might be required of delegations in the criminal context. Touby v. United States, 500 U.S. at 165-66, 111 S.Ct. 1752; see also United States v. Dhafir, 461 F.3d 211, 216 (2d Cir.2006). Unlike the delegation of legislative authority implicit in defendant’s urged construction, delegations that have previously been upheld in the criminal context have been accompanied by rigorous, “meaningful constraints” not only on the scope of the delegated authority, but also on the manner of its exercise. Touby v. United States, 500 U.S. at 166, 111 S.Ct. 1752 (upholding delegation where Attorney General was required, inter alia, to determine exercise of authority was “ ‘necessary to avoid an imminent hazard to the public safety’ ” (quoting 21 U.S.C. § 811(h)(1)));[3] see also United States v. Dhafir, 461 F.3d at 216 (upholding delegation where “ ‘the authorities granted to the President ... may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared’ ” (brackets omitted) (quoting 50 U.S.C. § 1701(b))).[4]
In sum, while Guzman plainly controls our review, I continue to have reservations concerning the substantial delegation concerns raised by defendant’s proposed interpretation of SORNA. The court conclusively eliminates these concerns today by answering the question left open in Guzman, holding that the text and structure of the statute clearly do not support defendant’s construction and, in fact, signal Congress’s clear intent for SORNA’s registration requirements to take effect on the date of its enactment even as to persons previously convicted of predicate sex *513 offenses. I note simply that even if we had identified any statutory ambiguity, the rule of constitutional avoidance would further prompt me to construe § 16913(d) as the court does today to avoid possible constitutional infirmities in defendant’s construction. See, e.g., Clark v. Martinez, 543 U.S. at 381, 125 S.Ct. 716 (describing constitutional avoidance as “tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts”); see also United States v. Hinckley, 550 F.3d at 948 (Gorsuch, J., concurring) (“The Supreme Court tells us that we ought to construe statutes to avoid problems of potential constitutional dimension when a plausible alternative interpretation exists. And plainly a reasonable alternative [interpretation of § 16913(d) ] exists in this case far more consonant with every indicator of congressional intent.” (citation omitted)). Thus, that rule only reinforces my decision to affirm.

. Because constitutional avoidance is "a means of giving effect to congressional intent,” Clark v. Martinez, 543 U.S. at 382, 125 S.Ct. 716, it assumes priority over the rule of lenity, which applies in defendant’s favor “only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended,” Reno v. Koray, 515 U.S. 50, 65, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (citation and internal quotation marks omitted); see also United States v. Van Buren, 599 F.3d 170, 174 (2d Cir.2010) (“[T]he Supreme Court has reserved lenity for those situations in which a reasonable doubt persists about a statute’s intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute.” (internal quotation marks omitted; emphasis in original)); United States v. Wu, 419 F.3d 142, 147 (2d Cir.2005) ("The doctrine of lenity is one of last resort.” (internal quotation marks omitted)). For this reason, "the rule of lenity has no application” if SORNA's meaning should turn out to be clear after considering "every indicator of statutory intent,” including the doctrine of constitutional avoidance. United States v. Hinckley, 550 F.3d 926, 948 & n. 8 (10th Cir.2008) (Gorsuch, J., concurring).

. United States v. Guzman did not conclusively construe the first clause of § 16913(d), concluding that regardless of whether it confers broad or narrow authority, it is a permissible delegation that satisfies the "intelligible principle” test. See 591 F.3d at 92-93.

. In Touby, Congress had delegated authority to the Attorney General to schedule a substance as "controlled” on a temporary basis, pending completion of the requirements for permanent scheduling. See Touby v. United States, 500 U.S. at 162-64, 111 S.Ct. 1752. Petitioners, who had been convicted of manufacturing a temporarily scheduled drug, conceded that Congress had set out an "intelligible principle” to guide exercise of the Attorney General's discretion, but argued "that something more than an 'intelligible principle’ is required when Congress authorizes another Branch to promulgate regulations that contemplate criminal sanctions.” Id. at 165— 66, 111 S.Ct. 1752. The Court found it unnecessary to decide this issue, holding that the delegation "passes muster even if greater congressional specificity is required in the criminal context,” because the statute "meaningfully constrains the Attorney General’s discretion” by requiring a number of findings in support of a temporary scheduling, including that it be " 'necessary to avoid an imminent hazard to the public safety.’ ” Id. at 166, 111 S.Ct. 1752 (quoting 21 U.S.C. § 811(h)(1)).

. At issue in Dhafir was a delegation of authority to the President in the International Emergency Economic Powers Act ("IEEPA”), 50 U.S.C. § 1701 et seq., to issue regulations, the violation of which triggered criminal penalties, in response to declared international threats. See United States v. Dhafir, 461 F.3d at 213. We held that the IEEPA constrained the President’s exercise of such authority in a manner comparable to Touby and, further, that the statute related to foreign affairs, "an area in which the President has greater discretion” because of the authority vested exclusively in the executive by Article II. Id. at 216-17.